OA091 (Rev. 12/03) Criminal Complaint

## UNITED STATES DISTRICT COURT

_____ NORTHERN  DISTRICT OF  IOWA _____

| | |
|---|---|
| UNITED STATES OF AMERICA<br>V.<br>SHOLOM RUBASHKIN<br><br>(Name and Address of Defendant) | CRIMINAL COMPLAINT<br><br>Case Number: 08-MJ-00363 |

I, the undersigned complainant state that the following is true and correct to the best of my knowledge

and belief. Beginning at least May 2008  in _____ Allamakee _____ County, in

the _____ Northern _____ District of _____ Iowa _____ defendant(s) did,

(Track Statutory Language of Offense)

did knowingly conspire, confederate and agree with others, for the purpose of commercial advantage and private financial gain, to harbor one or more aliens at his place of employment in Postville, Iowa, knowing and in reckless disregard of the fact that such aliens had come to, entered and remained in the United States and aided and abetted the possession and use of fraudulent identification documents and aided and abetted aggravated identity theft

in violation of Title __8__ United States Code, Section(s) __1324(a)(1)(A)(v)(I); 1324(a)(1)(B)(i);__
   18 U.S.C. §1546(a)
   18 U.S.C. §1028A
   18 U.S.C. §2

I further state that I am a(n) _____ Special Agent _____ and that this complaint is based on the following facts:
                                    Official Title

See attached affidavit.

Continued on the attached sheet and made a part of this complaint:    ☒ Yes  ☐ No

_____
Signature of Complainant

Michael D. Fischels
Printed Name of Complainant

Sworn to before me and signed in my presence,

__October 30, 2008__           at       __Cedar Rapids,__ _____ __IA__
Date                                      City                                State

                                          _____
__Jon S. Scoles__     __Magistrate__       Signature of Judge
Name of Judge          Title of Judge

**STATE OF IOWA** ]
                 ] ss:              **AFFIDAVIT**
**COUNTY OF LINN** ]

Your Affiant, Michael Fischels, being duly sworn, does depose and state:

1.      I, Michael D. Fischels, am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (hereinafter "ICE") (previously the Department of Justice, Immigration and Naturalization Service). I have been employed with this agency since July 7, 1996. ICE agents are authorized to investigate violations of the Immigration and Nationality Act (INA), as well as offenses found in Title 8, 18 and Title 19 (Customs) of the United States Code.

2.      I am aware of the information set forth below through personal investigation, as well as from discussions with others persons involved in this investigation.

3.      On May 12, 2008, ICE Agents executed a search at Agriprocessors, Incorporated, in Postville, Iowa (hereinafter "Agriprocessors"). Agriprocessors is a slaughterhouse and meat processing facility. During the execution of the warrants, ICE Agents encountered approximately 389 undocumented aliens who were working at the plant. None of the undocumented alien workers were in possession of documents allowing them to work or reside in the United States legally.

4.      During the execution of the warrants, agents discovered and seized dozens of fraudulent permanent resident alien cards from offices within the human

resources department at Agriprocessors. Most of the cards were attached to application paperwork dated May 11 or May 12, 2008. Additional resident alien cards were grouped in stacks and not attached to any paperwork. Based upon common features, ICE agents determined that the vast majority of the fraudulent resident alien cards came from the same manufacturer. Out of approximately 96 fraudulent resident alien cards, approximately 90 exhibited alien registration numbers which were then assigned to other actual persons.

5. Approximately thirteen of the fraudulent resident alien cards seized from the offices of the within the Human Resources Department exhibited photographs of persons who were determined to have been working at Agriprocessors prior to May 11, 2008. All but two of those cards exhibited names which were different than the names the employees had been working under.

6. On or about July 9, 2008, your affiant interviewed Subject P. Subject P is a current employee at Agriprocessors whose responsibilities include providing safety orientation to new employees. Subject P told your affiant that he/she was working at Agriprocessors on May 11, 2008, and had been told to administer orientation briefings and packets for a large number of new applicants. Subject P noted that it was unusual to process so many applicants on a Sunday as new hiring usually took place on Tuesdays. Subject P stated that, in the afternoon of May 11, 2008, Subject P spoke with then Agriprocessors vice-president and CEO, Sholom Rubashkin. Subject P asked Sholom Rubashkin if Subject P could go home. Subject P told your affiant that Sholom Rubashkin replied by asking Subject P to just do one more group of employees.

7.      On or about August 15, 2008, your affiant interviewed Subject U. Subject U was a former supervisor of the beef-kill area at Agriprocessors. This area included four different departments. Subject U told your affiant about a re-hiring scheme that had taken place at Agriprocessors shortly before the execution of the search warrants on May 12, 2008.

8.      Subject U stated that, approximately two weeks prior to the May 12, 2008, search, Subject U's supervisor, Subject S, told Subject U that he/she would be losing some of his/her foremen because they had bad papers. Subject S is an operations manager at Agriprocessors. The following week, on or about the Thursday before the search, Subject U received a list of employees who worked in his/her departments from Subject A, an assistant of the human resources department at Agriprocessors. Subject A told Subject U that the employees on the list had to be terminated because their names did not match their social security numbers. Subject U set up a meeting with the employees under his/her supervision. Prior to the meeting, Subject U and Subject S discussed helping the employees who were on the list. Subject S told Subject U to meet with the employees to determine how they could help.

9.      Subject U stated that, later that afternoon or evening, Subject U met with employees from his/her departments. Subject U told the employees that were on the list that they would have to be terminated because their names did not match their social security numbers. Subject U stated that one of his/her foreman was at the meeting and said he/she could purchase new identification documents for the employees who were to be terminated. Subject U explained that the foreman

arranged to charge the employees $200.00 for new identification documents and $20.00 for gas.

10.     Subject U told your affiant that many of the employees did not have the money to pay for the documents. Subject U stated that he/she met with Subject S and explained that the employees needed about $4,500.00 for new documents. Subject S agreed they should try to loan them the money.

11.     Later that evening, Subject S took Subject U to meet with Sholom Rubashkin. They met near the barn area of the Agriprocessors plant. Although he/she did not participate in the meeting, Subject A was nearby in his/her vehicle. During the meeting, Subject U told Sholom Rubashkin that Subject U and Subject S needed $4,500.00 to help the employees who were to be terminated from Subject U's departments. Sholom Rubashkin asked if the money had to be in the form of cash and Subject U confirmed that the money had to be in cash form.

12.     Subject U stated that, the next morning, on Friday, May 9, 2008, Subject U was called to another meeting with Subject S and Sholom Rubashkin. Subject U stated that he/she again told Sholom Rubashkin that Subject U and Subject S needed $4,500.00 to help the employees. Sholom Rubashkin agreed to loan the money. Sholom Rubashkin also asked Subject U and Subject S why they did not want to get money for all of the employees who needed help instead of just the employees from Subject U's departments. Subject U replied stating that he/she was only taking care of his/her department employees.

13.     Subject U said that, later that day, Subject S gave Subject U $4,500.00 in $100.00 bills.

14.  Subject U stated that, at the end of the shift on the Friday before the search, Subject U provided $200.00 to each of his/her employees who needed a loan for the purchase of the new identification documents. Subject U stated that he/she provided the funds to the employees who, in turn, provided the money to the foreman who arranged the purchase of the documents. Subject U stated that each of the employees who were ordering new documents also provided the foreman with a new name, a date of birth, and a photograph to be used on their new identification documents. Subject U stated that he/she provided approximately $1,800.00 to $2,000.00 to the employees on that Friday.

15.  Subject U explained that on Sunday, May 11, 2008, he/she provided the remainder of the loan money back to Subject S.

16.  Subject U stated that, during the afternoon of May 11, 2008, the foreman returned to Agriprocessors with the completed new identification documents for the employees in Subject U's departments and other employees from other departments. Upon the foreman's arrival at the company, Subject U went to his/her office and assisted in providing the completed documents to the appropriate employees. Subject U stated that approximately 39-40 employees from his/her department and other departments came to pick up their new identification documents.

17.  Subject U stated that, in the afternoon and evening of May 11, 2008, Subject U, Subject S and Subject A assisted the employees who had received new identification documents in completing new applications in the human resources office of Agriprocessors. Subject U stated that the employees who received the new

identification documents completed new applications using new names and numbers.

18.     On or about July 16, 2008, Subject T testified in the grand jury. Your affiant has reviewed the grand jury transcript. The following information is based upon the undersigned's review of that grand jury transcript.

19.     Subject T is an undocumented alien who was employed at Agriprocessors in early May, 2008. Subject T testified that, on Friday, May 3, 2008, Subject A told Subject T that Subject T's name was on a list and that Subject T needed to get a new social security card and other papers immediately. On Monday, May 5, 2008, Sholom Rubashkin asked Subject T if Subject A had talked to Subject T yet and reiterated that Subject T needed to make sure Subject T got new papers to work because Subject T was going need them.

20.     On or about October 28, 2008, Subject A participated in an interview with your affiant. Subject A stated that, on approximately Thursday, May 8, 2008, he/she picked up Sholom Rubashkin at his house and drove him to the barn area at Agriprocessors. Subject A stated that Sholom Rubashkin met with Subject S for a short period while Subject U was also present in the area.

21.     Subject A stated that, on Friday, May 9, 2008, Sholom Rubashkin asked Subject A to come in and process new employee applications on Sunday, May 11, 2008. Subject A noted that new hiring usually happened on Tuesdays and it was very unusual to be processing new applications on Sunday. Subject A agreed to come in on Sunday and assist with the applications.

22.     Subject A stated that, on Sunday afternoon and evening, May 11,

2008, he/she assisted in processing a large number of new applications in the human resources area at Agriprocessors. Subject U, Subject S and Sholom Rubashkin were present. While processing the new applications, Subject A noticed that the first group of applicants all had white permanent resident alien cards that all appeared to be new. Subject A stated that he/she believed that these applicants may have been current employees of Agriprocessors who were supposed to have been terminated the previous Friday. Subject A stated that Sholom Rubashkin inspected the first group of IDs and told him/her that, the IDs looked good to him, and that he would sign the I-9 Forms for the applicants. Subject A stated that Sholom Rubashkin did not sign any I-9 Forms for the applicants. Subject A stated that he/she did recognize one of the applicants, Subject K, as a current employee of Agriprocessors.

23.     Under Title 8, United States Code, Section 1324(a), it is a criminal offense to encourage or induce an alien to reside in the United States, knowing or in reckless disregard of the fact that such residence is in violation of law. It is also a violation of Section 1324(a) to engage in a conspiracy to do the same. Section 1324(a)(1)(B) provides for enhanced penalties where the offense was done for the purpose of commercial advantage or private financial gain. Under Title 18, United States Code, Section 1546(a) and Title 18, United States Code, Section 2, it is a criminal offense to aid and abet the possession and use of fraudulent identification documents including those used to establish employment eligibility in the United States. Under Title 18, United States Code, Section 1028A, and Title 18, United States Code, Section 2, it is an additional criminal offense to aid and abet the

transfer, possession, or use, without lawful authority, of a means of identification of another person in relation to certain felony offenses, including Title 8, United States Code, Section 1324(a), and Title 18, United States Code, Section 1546(a). Based on these facts, and your affiant's training and experience, your affiant believes the defendant, Sholom Rubashkin, has violated Title 8, United States Code, Section 1324(a), Title 18, United States Code, Section 1546(a), Title 18, United States Code, Section 1028A, and Title 18, United States Code, Section 2.

24.  I declare under the penalty of perjury that the foregoing facts and circumstances are true and correct to the best of my knowledge and belief.

Executed this 30th day of October, 2008.

_____
Michael D. Fischels
Special Agent
Immigration and Customs Enforcement


Sworn to before me and subscribed in my presence this 30th day of October, 2008.

_____
Jon S. Scoles
Magistrate Judge
United States District Court